IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SKYLER HEAVANS<br>1127 6th Street NW, Unit T<br>Washington, DC 20001<br><br>    Plaintiff,<br><br>  v.<br><br>GENE DODARO<br>Comptroller General of the United States<br>Government Accountability Office<br>In his official capacity,<br>441 G Street NW<br>Washington, DC 20548<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Skyler Heavans hereby sues Gene Dodaro, Comptroller General of the United States, for national origin discrimination, sex discrimination, retaliation, and harassment/hostile work environment in Federal employment.

## JURISDICTION

1. This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

## VENUE

2. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) and 42 U.S.C. § 2000e-5(f). The Plaintiff is employed in this judicial district and the discriminatory and retaliatory acts occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

3.     The Plaintiff has exhausted his administrative remedies prior to filing this lawsuit. The Plaintiff filed a formal administrative complaint of employment discrimination with the GAO's Office of Opportunity and Inclusiveness (O&I) on August 22, 2021. As of February 18, 2022, 180 days have passed since the Plaintiff filed his O&I formal complaint and the Agency has not issued a final decision. The Plaintiff thus files this suit in federal district court. The incidents complained of in the instant action are those complained of in Plaintiff's August 22, 2021, complaint as well as like or related acts of discrimination, retaliation and harassment/hostile work environment.

**PARTIES**

4.     The Plaintiff, Skyler Heavans, an Iranian male, is a citizen of the United States and a resident of the District of Columbia. At all times relevant to this suit, he has been employed with the Learning Center of the U.S. Government Accountability Office in the District of Columbia.

5.     The Defendant is the Comptroller General of the United States. As such, he is the head of the U.S. Government Accountability Office (GAO). He is sued solely in his official capacity.

**FACTUAL BASIS**

6.     At the time of the events giving rise to this complaint, the Plaintiff was the Assistant Director of Instructional Systems Design ("ISD") and Learning Technologies at GAO's Learning Center ("LC"). Previously, Plaintiff had been working at GAO since August 2013. Plaintiff had only positive performance reviews until he was reviewed by Chief Learning Officer Kirstin Austin, a white American woman. Plaintiff's immediate supervisor during the relevant timeframe was Amy Lyon, Director of LC Operations, another white American woman.

7.  The Plaintiff was the only Iranian-American Director among the all-white, non-Iranian, American LC Leadership Team at the time. This leadership team included Ms. Austin, Ms. Lyon, Linda Garcia, Director of GAO-Wide Curriculum, Terry Richardson, Director of Leadership Curriculum, and David Moser, Director of Analyst Curriculum.

8.  On April 1, 2019, GAO hired Kirstin Austin as new Chief Learning Officer ("CLO").

9.  On April 2, 2019, as part of the Learning Center's one-on-one meet and greets, Ms. Austin asked the Plaintiff "where [he was] from?" When the Plaintiff replied that he is Iranian, Ms. Austin stated that the Plaintiff's name was "not Middle-Eastern." The Plaintiff explained that his family had Americanized their names when they became U.S. citizens.

10. From May of 2019 through the present, Ms. Austin treated him differently and scrutinized him more severely than the non-Iranian directors.

11. She repeatedly skipped over him during meetings and belittled him by telling him she "did not understand him." This occurred no fewer than ten (10) separate occasions. Ms. Austin's statements implied that Ms. Austin was questioning Mr. Heavans' competency which undermined him in front of his peers, co-workers and supervisors.

12. After October of 2019, Plaintiff was only one of two men in the leadership team of the Learning Center. The other man in leadership is David Moser, a white male of Irish heritage.

13. On or about October of 2019, Terry Richardson, Director of the Leadership Curriculum, a white male, was in leadership, but was replaced by Shanna Wallace, a woman.

14. From April 2019 to April 2020, Ms. Austin repeatedly complained about a "man" who made her life difficult at her former job at the Department of Homeland Security.

15. Ms. Austin directed these complaints toward the Plaintiff. The Plaintiff found these comments discriminatory and harassing based upon his sex.

16. Ms. Lyon and Mr. Moser, a white male, who acted as the Plaintiff's supervisor whenever Ms. Lyon was out, agreed that Ms. Austin's comments about this "man" were implied to be discriminatory toward Plaintiff because they noticed that she made the comments particularly in the Plaintiff's presence and in front of his colleagues.

17. By September of 2019, the Plaintiff had been working on three initiatives for about two and a half years: 1) authoring an Instructional Systems Design ("ISD") Framework, 2) instituting the Planning, Analysis, Design, Development, Implementation, Evaluation, and Maintenance ("PADDIEM") ISD Model, and 3) developing the Action Learning Adjunct Designer-Instructor ("ALADin") Program. These initiatives achieved great success within the LC and had high visibility throughout GAO.

18. On September 17, 2019, Ms. Austin rejected all three of Plaintiff's initiatives. She announced that all three would be discontinued.

19. Plaintiff disagreed with Ms. Austin's decision to terminate his projects. Ms. Austin assigned the ISD Framework Initiative to a female subordinate in or around August 13, 2021. Ms. Austin then became upset with the Plaintiff when he raised his concerns. Plaintiff was the only member of his team whose projects were discontinued by Ms. Austin.

20. On December 12, 2019, after Ms. Austin removed these projects from Plaintiff Ms. Austin conducted her first performance review for the Plaintiff. The December 12, 2019 performance review was the Plaintiff's 's first performance review conducted by Ms. Austin which contained his first negative statement rating in his entire 18-year career in federal service.

21. Moreover, the rating violated GAO policy that employees must be provided coaching before they are given negative appraisals as Plaintiff was not given the required coaching.

22. From October 2019 to March 2020, Ms. Austin increasingly passed over the Plaintiff during meetings and excluded him from decisions that directly affected his work.

23. Around this same time, she removed him from management emails and from discussions about LC operations and activities.

24. Further, she excluded him from final interviews for the hiring of his own direct report, against GAO policy.

25. From the beginning of April 2019 until September 2020, the Plaintiff informed Ms. Lyon about Ms. Austin's inappropriate behavior and decisions from the past year. He repeatedly asked for internal mediation, but Ms. Lyon advised him to "look ahead and not back."

26. At no point did Ms. Lyon escalate Plaintiff's concerns with the Office of Human Capital ("Human Capital"), Office of General Counsel or the GAO Office of Opportunity and Inclusion ("O&I").

27. From April 2019 to September 2020, Plaintiff did not receive any CLO professional development opportunities accorded his fellow directors. He was only given general training.

28. The Plaintiff's fellow directors reached out to Ms. Austin and shared their discomfort at how she treated the Plaintiff during meetings and that this behavior towards him lacked "people values." "People values" is a phrase used when training GAO employee in diversity initiatives.

29. On December 10, 2020, Ms. Austin gave the Plaintiff a "Sustained" rating in "Managing Relationships" in his annual performance appraisal.

30. The Plaintiff objected again to the reduction in his performance appraisal. He presented Ms. Austin with evidence that she should have rated him as "Exceeds" in the "Managing Relationships" category. Ms. Austin rejected that rating.

31.     The Plaintiff informed Ms. Lyon that this decision was discriminatory because non-Iranian employees received higher "Managing Relationships" ratings despite their continuing struggles with their relationships.

32.     The Plaintiff again requested that Ms. Lyon provide him and Ms. Austin the opportunity to engage in internal, informal mediated discussions because Plaintiff was considering filing a discrimination complaint. Ms. Lyon discouraged the Plaintiff from making a complaint of discrimination.

33.     From 2020 to 2021, the Plaintiff repeatedly requested CLO professional development classes from Ms. Lyon, Mr. Moser, and Ms. Austin. These requests were denied, but his non-Iranian colleagues were provided those professional training opportunities.

34.     In April 2021, Ms. Lyon gave the Plaintiff high praise during his mid-point performance review and assured the Plaintiff that his "above-and-beyond attitude" would lead to "Exceeds" ratings in every category for 2021, including an "Exceptional" in "Managing Relationships."

35.     On May 13, 2021, Ms. Austin scheduled a meeting with GAO's Information Systems & Technology Services ("ISTS") and Financial Management and Business Operations ("FMBO") managers and, unbeknownst to the Plaintiff, she inaccurately criticized the Plaintiff's lead Talent Management System ("TMS") project to make him appear incompetent.

36.     On May 17, 2021, an LC management training was scheduled for Plaintiff's pre-scheduled day off. Although the entire leadership team, including Ms. Austin and Mr. Moser, knew why the Plaintiff was unable to attend, Ms. Austin and Mr. Moser contacted him three times within a 24-hour period to ask why he was unable to attend.

37. Ms. Austin and Mr. Moser then criticized the Plaintiff for not providing an immediate response despite no other director or manager responding, even though they did not criticize other managers for not attending a leadership meeting.

38. The Plaintiff informed Ms. Austin that her actions toward him "lack[ed] people values."

39. Immediately after this, Ms. Austin further isolated the Plaintiff, turning more staff and stakeholders against him and creating a hostile work environment in retaliation for his criticism of Ms. Austin's conduct.

40. On May 24, 2021, without the Plaintiff's knowledge, Ms. Austin fired one of his ISD Team's program managers, Doug Toti.

41. This action adversely impacted the Plaintiff's relationships with the rest of his team, who believed that the termination of Mr. Toti was his decision.

42. On June 22, 2021, during a one-on-one feedback session, Ms. Austin mimicked and caricatured the Plaintiff's Iranian accent, mocking his national origin with a deeper male voice.

43. Between June and August of 2021, Ms. Austin humiliated the Plaintiff and "corrected" his pronunciation, due to his accent, of her first name in several successive team meetings. Plaintiff explained multiple times that her name was difficult to pronounce due to his accent.

44. Though others continually mispronounced Ms. Austin's name, Plaintiff was the only person who was counseled on his accented pronunciation of her name.

45. After Plaintiff made his complaints in 2021 against the responsible management officials, Plaintiff was given a written reprimand for his pronunciation with his Iranian accent.

46. From June 24, 2021 to July 8, 2021, the Plaintiff went on a pre-scheduled 2-week vacation. While out, Ms. Austin and Mr. Moser, met with each of Plaintiff's direct reports to inquire about his performance as a manager.

47. Upon returning on July 8, 2021, the Plaintiff noticed that a meeting had been scheduled by Ms. Austin for herself, Mr. Moser, and Plaintiff on July 9, 2021.

48. On July 8, 2021, Plaintiff contacted GAO's Office of Opportunity & Inclusion ("O&I") and Ms. Lyon and requested a mediator to attend the July 9, 2021, meeting because of Ms. Austin's continued discriminatory treatment and because of Ms. Austin's humiliating behavior of mocking his Iranian accent.

49. On July 9, 2021, after numerous Agency discriminatory and harassing actions, the Plaintiff again requested mediation to resolve Ms. Austin's actions.

50. Ms. Austin refused to engage in mediation to resolve Plaintiff's concerns.

51. During the July 9, 2021 meeting, Ms. Austin notified Plaintiff of "Marginal" performance ratings for each of his performance competencies.

52. These ratings were two steps lower than the exceptional mid-point feedback Ms. Lyon gave him less than two months prior.

53. During the July 9, 2021 meeting, Ms. Austin informed Plaintiff that he would no longer receive the benefit of a "flex schedule" and would be moved to a standard Monday to Friday work week.

54. During the July 9, 2021 meeting and after Ms. Austin's criticisms, Plaintiff told Ms. Austin mocking his voice on June 22, 2021 was unacceptable, as were the false accusations presented to him during the meeting.

55. On July 9, 2021, Plaintiff informed Ms. Austin that he intended to file an internal complaint against her for discrimination, retaliation, and hostile work environment.

56. Following the July 9, 2021 meeting, Plaintiff was required to use sick leave for severe and worsening depression attributable to Ms. Austin's discriminatory, retaliatory and harassing conduct.

57. On July 20, 2021, Plaintiff informed Ms. Lyon and Gloria Taylor, O&I Representative, that he was suffering from extreme depression and anxiety, noting that "I have never felt this level of discrimination and hate before."

58. On July 12, 2021, Plaintiff sent an email to Human Capital personnel, including Darlene Mansfield, Sarah Muldrew, Tamara Thomas, Katherine Amarelo, and Sandy Antonishek, informing them that he was subjected to a hostile work environment and retaliation.

59. Ms. Amarelo responded and referred Plaintiff to O&I. Plaintiff also informed Amy Lyon of the matter in a one-on-one meeting.

60. On July 14, 2021, Plaintiff contacted O&I to initiate EEO counseling.

61. On July 23, 2021, Plaintiff had his first meeting with O&I to raise his complaint of discrimination and harassment.

62. On August 10, 2021, the Plaintiff received a Notice of Right to File a Formal Discrimination Complaint.

63. On August 13, 2021, Ms. Austin announced that the Plaintiff would be excluded from all future LC management meetings. The Plaintiff had regularly attended these meetings since his 2016 promotion to Assistant Director. Plaintiff was the only director excluded from the meetings.

64. Within 45 minutes of notifying Plaintiff that he would be excluded from all management meetings, Ms. Austin transferred Plaintiff's direct report, Elina Tsaturyan, to report directly to

her. This transfer removed the Plaintiff's management responsibilities on the TMS project that he had led for the past four years.

65. At the same time, Ms. Austin stated that she would be bringing back the Plaintiff's ISD framework that she had cancelled in 2019, calling it instead a "Quality Assurance" framework.

66. Between August 18, 2021 and August 20, 2021, after Plaintiff filed his complaint of discrimination and retaliation, the Plaintiff started to receive only "Marginal" performance ratings in his performance feedback.

67. In August 2021, the Plaintiff contacted General Counsel Investigators, Cam Flores and Sarah Cornetto, about the increased retaliation and hostile work environment. Human Capital investigator Sandy Antonishek interviewed the Plaintiff on August 20, 2021.

68. On or about August 22, 2021, Complainant amended his claims with O&I to include additional claims of discrimination, retaliation and harassment/hostile work environment.

69. Plaintiff also spoke about the discriminatory treatment with Katherine Lenane, O&I Director, on September 23, 2021. After filing his complaints with both the Office of Human Capital and the Office of General Counsel, GAO conducted its investigations.

70. On September 8, 2021, Plaintiff advised Human Capital that Ms. Austin's discriminatory treatment and retaliatory actions toward him had greatly increased.

71. Plaintiff was subsequently moved from his managerial position to a non-managerial position in another department ("ISTS") without his consent.

72. On October 20, 2021, Ms. Austin promoted Ms. Tsaturyan, a non-Iranian female, to Supervisor of LC Business Operations. This promotion was Ms. Tsaturyan's second promotion in less than two years despite lower performance ratings from both Amy Lyon and Plaintiff in the FY21 performance cycle.

73. On December 3, 2021, just two months after transferring the Plaintiff to ISTS, Ms. Austin reinstated the Plaintiff's ISD Framework that she had ordered him to discontinue in 2019. The Plaintiff had worked on this project for many years before it was discontinued by Ms. Austin and the reimplementation of the project without his involvement creates a strong inference that the initial removal of Mr. Heavans from the project was discriminatory and retaliatory.

74. In December 2021, Ms. Austin conducted the Plaintiff's performance review despite his pending discrimination and retaliation complaints against her. On December 14, 2021, the Plaintiff received one "Sustained" and two "Marginal" ratings.

75. The unlawful employment practices complained of herein from 2019 to 2021 were intentional.

76. The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

**COUNT ONE**
**(Discrimination Based on National Origin in Violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

77. Plaintiff repeats each of the allegations contained in paragraphs 1-76.

78. Plaintiff is a member of a protected class (national origin) as he is Iranian.

79. Defendant violated Title VII when it discriminated against Plaintiff by subjecting him to different terms and conditions of employment based on his national origin.

80. Defendant's adverse treatment of Plaintiff gives rise to an inference of discrimination.

81. Between 2019 and 2021, Defendant unlawfully discriminated against Plaintiff when he was continually excluded from meetings, emails, and discussions that were directly relevant to his work.

82. Defendant unlawfully discriminated against Plaintiff between 2019 and 2021 when Ms. Austin subjected him to greater scrutiny than his non-Iranian peers.

83. Defendant unlawfully discriminated against Plaintiff when only his projects were scrutinized and discontinued in July 2019, one of which was later reintroduced by Ms. Austin without Plaintiff's involvement in August 2021. Once Plaintiff had departed the Learning Center, Ms. Austin had reintroduced the project renaming it the "Quality Assurance Framework" and assigned the project to a non-Iranian woman.

84. Defendant unlawfully discriminated against Plaintiff when Ms. Austin revoked his flex schedule on July 9, 2021.

85. Defendant unlawfully discriminated against Plaintiff when he was transferred from his position to a non-managerial position in a different department on August 13, 2021.

86. Defendant unlawfully discriminated against Plaintiff when he was given "Marginal" ratings by Ms. Austin in 2021 without justification or prior counseling, in violation of GAO policy.

87. Defendant unlawfully discriminated against Plaintiff when Ms. Austin continually undermined his position by unfairly criticizing his work in meetings, firing his contract direct report without his input or notice, and excluding him from the hiring of his new federal direct report in violation of GAO policy.

88. Defendant unlawfully discriminated against Plaintiff when Ms. Austin continually singled him in 2021 out for his pronunciation of her name due to his Iranian accent.

89. Defendant unlawfully discriminated against Plaintiff when Ms. Austin mimicked and caricaturized his Iranian accent during a June 22, 2021 meeting with Plaintiff.

90. When taken as a whole, the Defendant's conduct constitutes discrimination based on national origin in violation of Title VII.

91. The unlawful actions taken against Plaintiff were committed because of Plaintiff's national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

92. As a direct and proximate result of this unlawful act by Defendant, Plaintiff has suffered economic losses and has suffered and continues to suffer lost benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

**COUNT TWO**
**(Discrimination Based on Sex in Violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

93. Plaintiff repeats each of the allegations contained in paragraphs 1-76.

94. Plaintiff is a member of a protected class (sex) as he is male.

95. Defendant acted adversely when it subjected Plaintiff to different terms and conditions of employment based on his sex.

96. Defendant's adverse treatment of Plaintiff gives rise to an inference of discrimination.

97. Defendant unlawfully discriminated against Plaintiff when he was continually excluded from meetings, emails, and discussions that were directly relevant to his work between 2019 and 2021.

98. Defendant unlawfully discriminated against Plaintiff between 2019 and 2021 when Ms. Austin singled him out for additional work and subjecting him to greater scrutiny than his female peers.

99. Defendant unlawfully discriminated against Plaintiff based on his sex when only his projects were scrutinized and discontinued in September 2019, one of which was later reintroduced by Ms. Austin without Plaintiff's involvement in August 2021.

100. Defendant unlawfully discriminated against Plaintiff based on his sex when Ms. Austin revoked his flex schedule on July 9, 2021.

101. Defendant unlawfully discriminated against Plaintiff based on his sex when he was transferred from his managerial position in the Learning Center to a non-management position in ISTS, a different department, on August 13, 2021 without his consent.

102. Plaintiff was unlawfully discriminated against based on his sex when Ms. Austin transferred some of his critical job duties to a female employee, to wit: Plaintiff's management responsibilities on the TMS project were given to a female employee, Elina Tsaturyan, whom he had supervised for the past four years.

103. Defendant unlawfully discriminated against Plaintiff based on his sex when he was given "Marginal" ratings in 2021, in violation of GAO policy.

104. Defendant unlawfully discriminated against Plaintiff based on his sex when Ms. Austin continually undermined his position by unfairly criticizing his work in meetings, firing his contract direct report without his input or notice, and excluding his from the hiring of his new federal direct report in violation of GAO policy.

105. Defendant unlawfully discriminated against Plaintiff when Ms. Austin constantly commented to him that "a man" had previously made her life difficult at work.

106. The Defendant's conduct as alleged above constitutes discrimination on the basis of sex in violation of Title VII.

107.    The unlawful actions taken against Plaintiff were committed because of Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

108.    As a direct and proximate result of this unlawful act by Defendant, Plaintiff has suffered economic losses and has suffered and continues to suffer lost benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

**COUNT THREE**
**(Retaliation for Engaging in Protected Activity in Violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

109.    Plaintiff repeats each of the allegations contained in paragraphs 1-76.

110.    Plaintiff engaged in protected activity by opposing discrimination in the workplace, filing complaints of discrimination, and participating in the complaint process starting in 2020 and continuing throughout 2021.

111.    Plaintiff engaged in protected activity when he made complaints of workplace discrimination to Ms. Lyon from September 2019 through 2021.

112.    Plaintiff engaged in protected activity by opposing discrimination in the workplace when on July 9, 2021, he informed Ms. Austin that mimicking his accent and unwarranted criticism were discriminatory actions and he intended to file a complaint of discrimination.

113.    Plaintiff engaged in protected activity on July 12, 2021 when he made a complaint of discrimination to Human Capital.

114.    Plaintiff engaged in protected activity on July 14, 2021 when he made a complaint of discrimination to O&I.

115. Plaintiff engaged in protected activity on July 23, August 20, and September 23, 2021 when he participated in GAO's discrimination investigations by giving interviews to investigators.

116. Plaintiff engaged in protected activity on August 22, 2021 when he made additional complaints of discrimination, retaliation and harassment/hostile work environment to Human Capital.

117. Defendant discriminated against Plaintiff by subjecting him to different terms and conditions based on his engagement in protected activity.

118. Defendant engaged in unlawful retaliation when, following the Plaintiff's protected activity, it continually excluded Plaintiff from meetings, emails, and discussions related to his work.

119. Defendant engaged in unlawful retaliation when, following the Plaintiff's protected activity, Ms. Austin unfairly scrutinized Plaintiff's work.

120. Defendant engaged in unlawful retaliation when, following the Plaintiff's protected activity, Ms. Austin rescinded his flexible work schedule on July 9, 2021.

121. Defendant unlawfully discriminated against Plaintiff when he was transferred from his managerial position in the Learning Center to a non-management position in ISTS, a different department, on August 13, 2021.

122. Defendant was unlawfully retaliated against when some of his critical job duties were given to a female employee, to wit: Ms. Austin transferred Plaintiff's management responsibilities on the TMS project that he had led for the past four years to Elina Tsaturyan.

123. Defendant engaged in unlawful retaliation when, following the Plaintiff's protected activity, he was given "Marginal" ratings by Ms. Austin in 2021.

124. Defendant engaged in unlawful retaliation when, following the Plaintiff's protected activity, Ms. Austin continually undermined his position by unfairly criticizing his work in meetings, firing his contract direct report without his input or notice, and excluding him from the hiring of his new federal direct report in violation of GAO policy.

125. There is a causal connection between the Defendant's treatment of Plaintiff and Plaintiff's engagement in protected activity. Due to the temporal proximity between the discriminatory and retaliatory actions against Plaintiff and his engaging in protected activity, Defendant's adverse actions against Plaintiff occurred under circumstances that give rise to an inference of unlawful discrimination and retaliation.

126. Defendant's actions have the purpose and effect of deterring engagement in protected activity.

127. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII.

128. As a direct and proximate result of this unlawful act by Defendant, Plaintiff has suffered economic losses and has suffered and continues to suffer lost benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

**COUNT FOUR**
**(Harassment/Hostile Work Environment in Violation of Title VII, 42 U.S.C. §2000e *et seq.*)**

129. Plaintiff repeats each of the allegations contained in paragraphs 1-76.

130. Plaintiff is a member of protected classes based on national origin, was discriminated against on the basis of sex and has engaged in Title VII-protected activity.

131. Defendant subjected Plaintiff to a hostile work environment by creating and maintaining an abusive working environment permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

132. Defendant created a hostile work environment when it continually excluded Plaintiff from meetings, emails, and discussions that were directly relevant to his work between 2019 and 2021.

133. Defendant created a hostile work environment when only Plaintiff's projects were scrutinized and discontinued in July 2019, one of which was later reintroduced by Ms. Austin without Plaintiff's involvement in August 2021.

134. Defendant created a hostile work environment when Ms. Austin revoked Plaintiff's flex schedule on July 9, 2021.

135. Defendant created a hostile work environment when, on September 8, 2021, Plaintiff brought his concerns to Human Capital that the discriminatory treatment and retaliation by Ms. Austin had greatly increased. Plaintiff was subsequently moved from his managerial position to a non-managerial position in another department ("ISTS") without his consent.

136. Defendant created a hostile work environment when Ms. Austin gave Plaintiff "Marginal" ratings in his 2021 performance review without justification or prior counseling.

137. Defendant created a hostile work environment when Ms. Austin conducted Plaintiff's 2021 performance review, despite his pending discrimination and retaliation complaints against her.

138. Defendant created a hostile work environment when Ms. Austin continually undermined his position by unfairly criticizing his work in meetings, firing his contract direct report without his input or notice, and excluding him from the hiring of his new federal direct report in violation of GAO policy.

139. Defendant created a hostile work environment when Plaintiff was the target of constant pointed comments by Ms. Austin about how previously "a man" made her life difficult at work.

140. The cumulative effect of the Defendant's actions was so severe and pervasive as to alter the terms and conditions of employment and created an abusive working environment.

141. The Defendant's conduct as alleged above constitutes a hostile and abusive working environment in violation of Title VII.

142. As a direct and proximate result of this unlawful act by Defendant, Plaintiff has suffered economic losses and has suffered and continues to suffer lost benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff requests that the Court award him:

A. Award back pay, front pay and compensatory damages in an amount sufficient to compensate for the pecuniary and nonpecuniary injuries he has suffered, such as but not limited to emotional distress and pain and suffering;

B. Award Plaintiff's attorney's fees, costs and interest in an amount to be determined at trial;

C. Grant Plaintiff such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues of fact and all causes of action raised by its complaint.

Dated this the 28th the day of March, 2022.

/s/ Natalie M. Koss
Natalie M. Koss, D.C. Bar No. 489551
Potomac Legal Group PLLC
1776 K Street NW, Suite 725
Washington, DC 20006
Telephone: (202) 643-9840
Facsimile: (202) 350-2654
Email: nkoss@potomaclegalgroup.com
*Attorney for Complainant Skyler Heavans*

/s/ Paula M. Potoczak
Paula M. Potoczak, D.C. Bar No. 929562
Law Office of Paula M. Potoczak
218 North Lee Street, Third Floor
Alexandria, Virginia 22314
(703) 519-3733 (Telephone)
(703) 519-3827 (Facsimile)
pmplaw@earthlink.net
*Attorney for Complainant Skyler Heavans*